UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                          Case No. 05-CR-113

JAMES P. THEYERL,

        Defendant.

**MEMORANDUM DECISION AND ORDER**

      Defendant James P. Theyerl is before the court on a petition alleging that he has violated the conditions of his supervised release by failing to provide access to financial records requested by his probation agent and cooperate with the IRS to determine any income tax liability he may have. Theyerl claims that he has now supplied his agent with the records she has requested and that his refusal to meet with an IRS agent to discuss his tax filings is protected by his Fifth Amendment right against self-incrimination. To the extent the Fifth Amendment is not applicable, Theyerl contends the condition requiring his cooperation should be narrowly construed so that it does not unduly limit his liberty and so as to prevent misuse of the revocation proceedings by the IRS. For the reasons that follow, I conclude that while Theyerl is free to invoke his privilege against self-incrimination, the Fifth Amendment does not excuse his refusal to meet with the IRS agent and produce the records requested. I also conclude that, given the circumstances of this case and Theyerl's history, the requirement that he meet with the IRS and provide records in order to assure he is in compliance with federal tax laws is reasonable.

## BACKGROUND

On July 29, 2005, Defendant James Theyerl entered a plea of guilty to one count of filing a false IRS Form 8300 in violation of 26 U.S.C. § 7212(a), and one count of filing a false and fictitious sight draft purported to be issued under the authority of the Department of Treasury, in violation of 18 U.S.C. § 514(a)(2). In return for his guilty pleas to those two counts, sixteen additional counts were dismissed. On October 31, 2005, Theyerl was sentenced to ten months on each count to be served concurrently and five years of supervised release.

Theyerl completed his term of incarceration and his supervised release began on June 16, 2006. On December 19, 2006, his United States Probation Officer (USPO) Margarita Binns filed a petition alleging that Theyerl had violated the terms of his supervision. More specifically, USPO Binns alleged that Theyerl had violated Special Conditions 3 and 4 of his supervision, which state:

> 3. The defendant is to provide access to all financial information requested by the supervising probation officer including, but not limited to, copies of all federal and state tax returns. All tax returns shall be filed in a timely manner. The defendant shall also submit monthly financial reports to the supervising probation officer.
>
> 4. The defendant is to cooperate with the IRS and submit all delinquent tax returns and pay all back taxes and interest under the guidance and supervision of the supervising probation officer.

(Doc. # 50.) According to USPO Binns' petition, Theyerl had failed to provide her with financial information regarding past taxes, in violation of Special Condition No. 3, and had failed to cooperate with the IRS, in violation of Special Condition No. 4. (Doc. # 68.) A hearing on the petition was originally set for January 23, 2007, but was adjourned at the request of the parties so they could attempt to reach a resolution on their own. According to counsel for Theyerl, his client has now provided his probation officer with copies of his tax returns for previous years and with

2

information for the current year that shows his income is below the filing threshold. Thus, in Theyerl's view, the first violation is no longer at issue.

Theyerl concedes that the parties were unable to reach agreement on the second of the alleged violations, however, and in a pre-hearing memorandum he argues that compelling him to "cooperate" with the IRS in the sense the government understands would violate his Fifth Amendment right against self-incrimination. In an effort to reach agreement on the second violation alleged in the petition, Theyerl and his attorney met with IRS Agent Michael Bake to determine what information the IRS wanted from his client. In the course of the meeting, it became clear to Theyerl's counsel that the IRS was conducting an audit of Theyerl's tax returns and that the agency believed that Theyerl was "either hiding income and/or improperly filling out personal and trust tax returns." (Def.'s Revoc. Mem. at 4.) Believing his client had a Fifth Amendment right to decline to answer Agent Bake's questions, counsel instructed Theyerl not to meet with him. That was the status of the matter at the time of the hearing.

At the hearing, the government called as a witness Agent Bake, who had received a referral concerning Theyerl shortly after his release from prison. Agent Bake testified that he had first sent letters to Theyerl's home and business requesting that he contact him for an interview. When Theyerl failed to respond, he contacted USPO Binns, who arranged for Theyerl to meet with Agent Bake in August. At that meeting, Agent Bake asked Theyerl why he didn't file his individual returns for certain years and attempted to obtain information about the trust returns he had filed. According to the Pre-Sentence Investigative Report (PSIR), Theyerl operated a car repair business, a charter boat business and a boat storage business, each of which was owned by a trust. (PSIR at 13.) It was in response to an investigation by Wisconsin Department of Natural Resources into the

3

accuracy of his charter boat records and notices he received from the Wisconsin Department of Revenue regarding his failure to pay sales and use taxes on his charter boat and repair businesses that Theyerl had filed 24 false Form 8300's with the IRS claiming receipt of more than $10,000 from various employees of those agencies, as well as a state judge, district attorney and clerk of court. (PSIR at 2.) The filing of a Form 8300 initiates an IRS investigation directed at the alleged payee in the reported transaction, and in filing the false reports, Theyerl apparently intended to harass or intimidate the state and county officers or employees who were investigating his own financial dealings. The requirement that Theyerl "cooperate with the IRS and submit all delinquent tax returns and pay all back taxes and interest under the guidance and supervision of the supervising probation officer" as a condition of his supervised release was based upon the fact that Theyerl appeared to be using a series of trusts as a tax avoidance scheme. Requiring that he also cooperate with the IRS was intended to bring him into compliance with state and federal tax laws and insure that he complied with the law in the future. In any event, Theyerl provided Bake little information about his personal returns and refused to answer any questions about the trust returns he had filed. He also refused to provide any of the documents creating the trusts or the records concerning their activity. When asked specifically what records he needed in order to determine whether Theyerl's returns accurately stated his tax liability, Agent Bake said he would need the trust documents so that he could determine how the trust was set up, the books and records of trust income, and any bank statements or other records of trust accounts. Agent Bake stated he also needed to interview Theyerl concerning the trade or businesses of the trusts.

No other witnesses were called to testify. At the conclusion of the hearing, I invited the parties to submit simultaneous briefs on the issue of whether the Court could lawfully order Theyerl,

4

as a condition of his supervised release, to meet with Agent Bake and answer questions concerning his previous tax filings and his relationship with the trusts for whom he claimed to work, and whether he could be lawfully ordered to produce the documents that Agent Bake indicated he would need to properly determine his tax liability. The parties have submitted their briefs and the matter is now ripe for decision.

**ANALYSIS**

The Fifth Amendment, in relevant part, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Thus, any person protected by the privilege "may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without at that time being assured that neither it nor its fruits may be used against him" in a subsequent criminal proceeding. *Maness v. Meyers*, 419 U.S. 449, 473, 95 S.Ct. 584, 598, 42 L.Ed.2d 574 (1976) (WHITE, J., concurring).

There is no dispute that Theyerl is entitled to the protection of the Fifth Amendment, notwithstanding the fact that he has been convicted of a crime and is presently under the supervision of a probation officer. *See Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) ("A defendant does not lose this protection by reason of his conviction of a crime; notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are

5

compelled they are inadmissible in a subsequent trial for a crime other than that for which he has been convicted."). There is also no dispute that a rational basis exists for Theyerl to believe that answering questions about the tax returns he has filed on behalf of himself and the trusts that hold the several businesses he has operated may subject him to criminal liability. According to Agent Bake, trade or business income is generally required to be reported on Schedule C and then entered as income on the personal tax return of the individual operating the trade or business. By claiming such income as trust income, it is possible that Theyerl has unlawfully avoided self-employment tax and understated his personal income. Willfully attempting to evade taxes is clearly a crime. *See* 26 U.S.C. § 7201. Thus, Theyerl may not be compelled to answer questions concerning his tax filings. In other words, he cannot be threatened with revocation if he asserts his Fifth Amendment privilege to any such questions. *Minnesota v. Murphy*, 465 at 434; *see also United States v. Cranley*, 350 F.3d 617, 622 (7th Cir. 2003).

But this does not mean that Theyerl cannot be ordered to meet with an IRS agent and answer questions to which he does assert his Fifth Amendment privilege. Justice Frankfurter observed in *United States v. Monia*, "[t]he compulsion which the privilege entitles a witness to resist is the compulsion to answer questions which he justifiably claims would tend to incriminate him. But the Constitution does not protect a refusal to obey a process." 317 U.S. 424, 433 (1943) (Frankfurter, J., dissenting). As even Theyerl recognizes, the IRS is authorized to issue a summons requiring a taxpayer to appear before it and give testimony. (Second Revocation Mem. at 6 (citing 26 U.S.C. § 7602(a)(3)). Assertion of one's Fifth Amendment rights, even when proper, does not excuse one's failure to appear in response to such a summons. *See United States v. Awerkamp*, 497 F.2d 832, 836 (7th Cir. 1974) ("In responding to a summons, the individual summoned must present

6

himself for questioning and 'claim the constitutional privilege as particular questions are asked.'") (*quoting In re Turner*, 309 F.2d 69, 71 (2d Cir. 1962)).

The copies of trust documents in his possession or control that Theyerl was ordered to produce, including the instruments creating the trusts, books and records of trust income, and any bank statements or other records of trust accounts, have even less protection under the Fifth Amendment. The Fifth Amendment does not protect business records that were voluntarily prepared. *United States v. Doe*, 465 U.S. 605, 610-11 (1984); *Fisher v. United States*, 425 U.S. 391, 409-10 (1976). This is especially true where, as here, the records sought are those not of a private individual but of a separate organization. *See Bellis v. United States*, 417 U.S. 85, 88 (1974) ("On the other hand, an equally long line of cases has established that an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally."). Thus, Theyerl has no Fifth Amendment right to refuse production of the records requested by Agent Bake.

Recognizing that the Fifth Amendment does not excuse his failure to comply with the conditions of his supervised release, Theyerl argues that the Court should narrowly construe the requirement of Special Condition No. 4 that he "cooperate with the IRS" to mean that he simply respond as any ordinary citizen would to any summons the IRS may issue pursuant to 26 U.S.C. § 7602 as part of its own investigation. Noting that a well-developed body of law governing the authority of the IRS to obtain information from taxpayers already exists, Theyerl argues that requiring that he "cooperate with the IRS" as a condition of his supervised release may deprive him of important procedural protections built into that body of law and allows the government to use his supervised release and these revocation proceedings as a kind of "stalking horse" by which it can

7

circumvent the normal taxpayer protections to obtain potentially incriminating information. (Second Mem. at 12-13.) Theyerl also notes that under 18 U.S.C. § 3583(d), conditions of supervised release must be reasonably related to the factors set forth in 18 U.S.C. § 3553(a)(1) (nature and circumstances of offense and history and characters of the defendant), § 3553(a)(2)(B) (need for sentence to afford adequate deterrence for criminal conduct), § 3553(a)(2)(C) (need for sentence to protect public from further crimes of defendant) and § 3553(a)(2)(D) (need for sentence to provide appropriate treatment). The government's interest in having the IRS audit his past taxes, Theyerl argues, is not reasonably related to any of these factors. "It would strain the word 'reasonable,'" he contends, "to state that the investigation by the IRS of new and different crimes is 'reasonably related' to a convicted crime of a different stripe." (Second Mem. at 16.) Thus, Theyerl claims that requiring that he "cooperate with the IRS" as a condition of his supervised release violates 18 U.S.C. § 3583(d)'s mandate that the discretionary conditions of supervised release imposed by the court involve no greater deprivation of liberty than is reasonably necessary to afford adequate deterrence, protect the public and provide needed treatment. Given the fact that the government has other ways of getting the same information, Theyerl contends that it would be improper and contrary to the public interest to allow the IRS "to sidestep important constitutional principles such as due process and the Fourth Amendment's warrant requirement." (Second Mem. at 21.) He therefore requests that the court decline to order him to produce the requested materials.

Turning first to Theyerl's suggestion that the court construe the requirement that he cooperate with the IRS to require no greater obligation on his part than the ordinary citizen would have, I note first that Theyerl is not in the position of an ordinary citizen. He is under the supervision of the court as a result of his commission of a federal crime. *United States v. Monteiro*,

8

270 F.3d 465, 472 (7th Cir. 2001) ("[T]he district court maintains continuing jurisdiction over the supervised release period."). The court, working through the United States Probation Office, has a special obligation to insure that individuals under its supervision obey the law. As noted above, the PSIR in this case revealed that Theyerl had been operating three separate businesses which he claimed were owned by various trusts and from which he claimed to receive no income. Based on this fact, as well as the facts underlying the crimes he committed, I concluded that he was likely not paying taxes on income that he received. In order to insure that he was in compliance with the United State tax laws, I ordered him as conditions of his supervised release to provide access to all financial information requested by the supervising probation officer and cooperate with the IRS. Both conditions are based on Theyerl's history and the circumstances surrounding his offenses. They are also reasonably related to the important sentencing goals of rehabilitation and protection of the public from further crimes.

The fact that Theyerl was neither charged with, nor convicted of, tax evasion is irrelevant. The purpose of supervised release is broader than simply insuring that the defendant does not commit the same crime again. It must, of course, have some relationship to the facts of the case, i.e., "the nature and circumstances of the offense and the history and characteristics of the defendant." § 35553(a)(1). But more importantly, it must further important sentencing goals such as rehabilitation of the defendant and protection of the public. *See United States v. Monteiro*, 270 F.3d at 468 ("A special condition of supervised release must relate reasonably to several sentencing goals, including the rehabilitation of the defendant and the protection of the public."). Here, the nature and circumstances of the offense and Theyerl's history of operating businesses from which he claimed to derive no income provided a basis for the court's conclusion that he was probably not

9

in compliance with United States laws governing the collection of taxes. And directing him to cooperate with the IRS in the sense of producing his financial records and the relevant trust records over which he had control, was reasonably related to his rehabilitation. It was intended to bring him into compliance with the tax laws of the United States. The condition was also reasonably related to the goal of insuring that he committed no further law violations or crimes.

The fact that the IRS has other ways of getting the same information is also irrelevant. The IRS has a different set of institutional goals and priorities than the court. Theyerl was ordered to provide his probation agent access to his financial records and cooperate with the IRS in determining any outstanding tax liability because in this court's view, requiring him to do so was reasonably related to his rehabilitation and necessary to insure he was not violating the law while on supervision. Having concluded from the PSIR that Theyerl had likely been avoiding taxes by attributing trade or business income to one or more trusts, the court could not simply ignore this fact in the hope that eventually it would come to the attention of the IRS and fall within that agency's priority guidelines. Even now, despite evidence suggesting that he controls three separate businesses, Theyerl claims he is indigent and has been found eligible for appointment of counsel under the Criminal Justice Act. 18 U.S.C. § 3006A at public expense. If in fact, Theyerl has arranged his financial affairs in such a way as to hide his actual income and assets so that he can avoid his obligation to pay taxes and hire his own attorney, the court has an obligation to try and stop him from doing so. Ordering him to cooperate with the IRS and pay any back-taxes and interest is a reasonable way of accomplishing this goal.

I therefore reject Theyerl's request to narrowly construe the cooperation requirement and conclude that his failure to meet with Agent Bake and produce the records requested by him

10

constitutes a violation of Special Condition No. 4. To the extent USPO Binns directed him to produce such records, it may also constitute a violation of Special Condition No. 3. But because Theyerl may have had a good faith basis for believing that his refusal to meet with Agent Bake, especially on advice of counsel, was justified, I decline to take any action on the revocation petition at this time. Instead, I direct Theyerl to meet with Agent Bake within the next twenty days, or as soon thereafter as Agent Bake's schedule permits, to answer questions concerning his financial affairs and in particular his relationship to the trusts that hold title to the businesses he has operated within the last five years. Theyerl is also directed to provide Agent Bake and/or USPO Binns with relevant financial records and other documents within his possession or control, including:

1. the instrument or instruments creating the trust or trusts that own any of the assets of the charter boat, car repair or boat storage businesses for which Theyerl has worked since 2002.

2. books and records of trust income, including the business ledger of any business operated by such trust.

3. Any bank statements or other records of trust accounts.

Theyerl may assert his Fifth Amendment privilege and refuse to answer any question put to him by Agent Bake that may tend to incriminate him, but he may not withhold requested documents on that basis. In the event Theyerl complies with the conditions of his supervision as the court has now construed them, the petition for revocation will be dismissed. If he does not, Agent Binns shall notify the court and the matter will be set for further hearing.

**SO ORDERED** this ____6th____ day of August, 2007.

      s/ William C. Griesbach
      William C. Griesbach
      United States District Judge